WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Janet Susan McCormick,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-24-00028-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Janet Susan McCormick's appeal from the Commissioner of the Social Security Administration's ("SSA," "the Commissioner," or "Defendant") denial of Social Security benefits. (Doc. 11). The appeal is fully briefed (Doc. 11; Doc. 16; Doc. 17), and the Court now rules.

**I.      BACKGROUND**

**A.      Factual Overview**

Plaintiff was 59 years old on her alleged disability onset date of October 11, 2017. (Doc. 11 at 2). She has a high school education and a history of past relevant work as a financial institution assistant branch manager and user support analyst. (*Id.*) Plaintiff filed her Social Security Disability Insurance (SSDI) benefits application on March 16, 2017, with a date last insured for SSDI benefits on December 31, 2022. (*Id.*) After an administrative hearing on December 9, 2019, an administrative law judge ("ALJ") denied Plaintiff's claim on January 21, 2020. (Doc. 8-3 at 31, 42). The SSA Appeals Council denied Plaintiff's request for review of that decision, adopting it as final on July 14, 2020.

(*Id.*)

Plaintiff appealed ALJ's decision to this Court. (*Id.*) The Court found that, contrary to Plaintiff's claim, "the ALJ permissibly discounted Plaintiff's symptom testimony." *McCormick v. Comm'r of Soc. Sec. Admin.*, No. CV-20-01780-PHX-DWL, 2022 WL 740923, *5 (D. Ariz. 2022). However, Plaintiff also argued that the ALJ erred by rejecting licensed professional counselor Deana Charter's ("LPC Charter") opinions. *Id.* at *2. Because the Commissioner "[made] no effort to defend the ALJ's rationale for rejecting LPC Charter's opinions" and "conceded that a remand is necessary," the Court remanded Plaintiff's claim to the SSA for further proceedings. *Id.* at *5.

### B.     The SSA's Five-Step Evaluation Process

To qualify for SSDI benefits, a claimant must show that she "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment. *Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do her previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities"; and (2) "gainful," i.e., usually done "for pay or profit." 20 C.F.R. § 416.972(a)–(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit"

the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to Step Four. *Id.* §§ 404.1520(a)(4)(iii), 404.1520(e). The claimant's RFC is her ability perform physical and mental work activities "despite [her] limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "[her] past relevant work." *Id*. §§ 404.1520(a)(4)(iv), 404.1520(e). "Past relevant work" is work the claimant has "done within the past 15 years, that was substantial gainful activity." *Id.* § 404.1560(b)(1). If the claimant has the RFC to perform his past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ will proceed to Step Five in the sequential evaluation process.

At Step Five, the final step, the ALJ considers whether the claimant "can make an adjustment to other work," considering her RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

### C. The ALJ's Application of the Factors

Here, at Step One, the ALJ concluded that the record established that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of October 11, 2017, through her date last insured, December 31, 2022. (Doc. 9-2 at 15).

At Step Two, the ALJ determined that Plaintiff had the following severe physical impairments: "obesity, sleep apnea, osteoarthritis, degenerative joint disease, fibromyalgia, history of right knee replacement, carpal tunnel syndrome, cubital tunnel syndrome, neuropathy, foot abnormalities, hypertension, a thyroid abnormality, diabetes mellitus, degenerative disc disease, and cervical spondylosis." (*Id.* at 15–16). However, the ALJ stated Plaintiff's mental impairments were non-severe because "[Plaintiff's] … depression, anxiety, and chronic pain syndrome, considered singly and in combination, did not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities," and no more than a "mild limitation in any" functional area. (*Id.* at 16–17).

At Step Three, the ALJ found that Plaintiff did not have any impairment or combination of impairments that met or medically equaled a listed impairment in Appendix 1 to Subpart P of 20 C.F.F. Part 404. (*Id.* at 17). Subsequently, the ALJ determined that Plaintiff had the RFC

> to perform light work, as defined in 20 CFR 404.1566(b), that does not require climbing of ladders, ropes, or scaffolds; that does not require more than occasional stooping, kneeling, crouching, or crawling; that does not require more than frequent balancing or climbing of ramps or stairs; that does not require more than frequent handling or fingering; that does not require concentrated exposure to vibration or pulmonary irritants; and that does not require any exposure to hazards or extreme temperatures.

(*Id.* at 19).

At Step Four, the ALJ established that through the date last insured, Plaintiff could perform her past relevant work as assistant branch manager and user support analyst. (*Id.* at 28). The ALJ did not reach Step Five and concluded that Plaintiff was not disabled as defined in the Social Security Act from the alleged onset date through September 26, 2023. (*Id.* at 29).

## II. LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ decision is "based on legal error or not supported by substantial evidence in the record."

*Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). "Substantial" evidence involves "more than a mere scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2007)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion."). Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

### III. DISCUSSION

Plaintiff raises two potential errors in the ALJ's analysis. First, the ALJ allegedly failed to provide specific and legitimate reasons, supported by substantial evidence, for his rejection of Dr. Park's medical opinion. (Doc. 11 at 16). Second, because the ALJ allegedly failed to provide germane reasons for rejecting LPC Charter's medical opinion, he improperly concluded Plaintiff's mental impairments were non-severe at Step Two. (*Id.* at 20). The Court addresses each potential error in turn.

#### A. Dr. Park's Opinion

- 5 -

Plaintiff first argues that the ALJ erred by according "no weight" to the opinion of Dr. Park. (Doc. 11 at 16, 17). For claims filed prior to March 27, 2017, Ninth Circuit courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Further, a treating physician's opinion "is entitled to more weight than that of an examining physician, and an examining physician's opinion is entitled to more weight than that of a nonexamining physician." *Orn*, 495 F.3d at 631. In general, ALJs gave more weight to medical opinions from treating physicians because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (pre-2017 amendments).

Applying the pre-2017 amendments regulations, when a treating physician's opinion is contradicted by another physician, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons that are supported by substantial evidence" in the record. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 1995). (citation omitted); *see also* SSR 96-2P, at *5 ("[T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

Although a "treating physician's opinion is entitled to 'substantial weight,'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 228 (9th Cir. 2009), it is "not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Batson*, 359 F.3d at 1195. If the ALJ decides not to give the treating physician's

medical opinion controlling weight, the ALJ must weigh it based on factors such as the nature, extent, and length of the physician-patient relationship, the frequency of evaluations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)).

Jennifer S. Park, M.D., was Plaintiff's primary care provider for approximately one year, beginning in April 2020. (Doc. 9-2 at 59; Doc. 11 at 6). The record shows that Plaintiff had at least nine patient visits with Dr. Park during that time. (R. at 1878–1995). In April 2021, Dr. Park completed an opinion in the form of a questionnaire entitled, "Medical Assessment of Ability to do Work-Related Physical Activities." (R. at 1803–04). In this assessment, Dr. Park opined that Plaintiff: (1) "could not sustain sedentary work"; (2) was limited to sitting for more than four hours, but less than six hours in an eight-hour workday due to fibromyalgia, arthritis, and peripheral neuropathy"; (3) would have pace limitations that would cause severe interruptions of work pace" and take "her off task greater than 21% of an eight-hour workday"; and (4) "would miss six days or more [of work] a month due to her impairments." (*Id.*; Doc. 11 at 14–15).

The ALJ gave Dr. Park's opinion "no weight," stating the following:

> The undersigned gives no weight to the opinion of Jennifer Park, MD, who opined the claimant['s] fibromyalgia, arthritis, anxiety and neuropathy would limit her to less than sedentary exertion work with her needing to change positions every hour, only occasional use of her hands and being off task throughout the day and miss work over six days a month, as well as moderately severe to severe difficulties with supervision, relating to other people and responding to work pressures (Exhibits 41F; 42F). She noted the claimant with brain fog, chronic pain[,] and chronic fatigue in support of her conclusions. However, other mental health providers noted the claimant with generally good functioning, including the mental consultative examiners[,] with her recently noted as scoring a 30/30 on a mini-mental examination that would be inconsistent with a finding of brain fog (Exhibits 17F/4-7; 30F/7, 10, 15, 20, 25, 30, 35, 41, 46; 37F/37, 45; 47F/3-5; 55F/3- 4, 11, 19,

> 28-29, 38-39, 45-46). Furthermore, the physical limitations noted are inconsistent with the State consultant findings and more recent evidence of full range of motion, normal strength[,] and a normal to slightly antalgic gait (Exhibits 31F/2, 15, 25; 35F/37; 50F/1-2; 52F/6-7, 11; 54F/9; 58F/3, 8, 22).

(Doc. 9-2 at 27). Because the mental consultative examiners' and State Agency physicians' opinions conflict with Dr. Park's opinion, the Court examines whether the ALJ's decision to assign the opinion "no weight" is based on "specific and legitimate reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198.

Plaintiff argues that the ALJ's reasons for completely discounting the opinion of Plaintiff's treating physician, Dr. Park, were insufficient. (Doc. 11 at 16, 17). The Court agrees. The ALJ's first reason to fully reject Dr. Park's opinion was that "other mental health providers[']" reports of Plaintiff having "generally good functioning" and Plaintiff's perfect score on a mini-mental status examination given by the mental consultative examiner were inconsistent with Dr. Park's opinion that Plaintiff had "brain fog." (Doc. 9-2 at 27) (citing Exs. 17F at 4–7; 30F at 7, 10, 15, 20, 25, 30, 35, 41, 46; 37F at 37, 45; 47F at 3–5; 55F at 3–4, 11, 19, 28–29, 38–39, 45–46).

However, it is unclear to the Court what the ALJ means by "generally good functioning." While the ALJ cites to multiple page numbers within psychiatric progress notes and within the two mental consultative physicians' evaluation reports in support of his assertion, the pages each contain more than one type of information, and the ALJ does not identify which evidence on these pages constitutes "good functioning." (*Id.*) Thus, the ALJ's reasoning fails to achieve a sufficient level of specificity. *See* SSR 96-2P, at *5 ("[The ALJ's reasons] must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) (indicating that it is improper for a court to "speculate as to the grounds for the ALJ's conclusions").

The Court recognizes that some of the pages in the record to which the ALJ identifies as containing evidence of "generally good functioning" include, among other information, "Mental Status Evaluations." (Ex. 30F at 7, 10, 15, 20, 25, 30, 35, 41, 46; 37F at 37, 45; 55 F at 3–4, 11, 19, 28–29, 38–39, 45–46). These "Mental Status Evaluations" contain information about Plaintiff's mental status at the time, such as: "Thought processes: logical," "Insight, good," "Judgment: good," "Concentration: good" (Ex. 30F at 7, 10); and "Mood: euthymic, "Affect: full," Thought processes: logical," "Perception: within normal limits," "Thought Content: within normal limits," "Cognition: within normal limits," "Intelligence estimate: average," "Insight: within normal limits," "Judgment: within normal limits" (Ex. 30F at 15, 20, 25, 30, 35, 41, 46; 37F at 37, 45).

Nonetheless, even if the Court were to act outside of its authority[1] and assume that these "Mental Status Evaluations" constituted the "generally good functioning" to which the ALJ refers, the ALJ still would not have met his burden to provide the specific and legitimate reasoning required to reject Dr. Park's opinion. *See Lybarger v. Saul*, No. CV-20-0030-TUC-LCK, 2021 WL 1169933, *5–6 (D. Ariz. Mar. 29, 2021) (finding that an ALJ "should reconsider [his] opinion on remand" when he gave little weight to a medical opinion "because he found it inconsistent with the record evidence documenting" information akin to the above "Mental Status Evaluations," e.g., "normal behavior, moods, memory, judgment, insight, thought processes and content,… concentration, as well as [the claimant's] average intelligence."). Indeed, "[i]t is not self-evident that when a claimant demonstrates normal behavior, judgment, and concentration during medical appointments, she necessarily has both the stress tolerance and ability to sustain a daily schedule required for full-time employment." *Id.* In addition, because the results of the mental consultative examiner's Mini Mental Status Exam—which the ALJ cites as being "inconsistent with a finding of brain fog"—also contain essentially the same information as the above "Mental Status Examinations," it, too, fails as a specific and legitimate reason to reject Dr. Park's opinion. (Ex. 17F at 4) ("The Mini-Mental Status Exam was administered. This is used as

---

[1] *See Brown-Hunter*, 806 F.3d at 489 (indicating that it is improper for a court to "speculate as to the grounds for the ALJ's conclusions").

- 9 -

a brief screening for orientation, immediate/delayed memory recall, working memory, attention, language, and visual-spatial ability.").

The second reason the ALJ provides for giving Dr. Park's opinion "no weight" is that "the physical limitations noted are inconsistent with … more recent evidence of full range of motion, normal strength[,] and a normal to slightly antalgic gait." (Doc. 9-2 at 27). However, it appears that the ALJ did not "evaluate the record in light of fibromyalgia's unique symptoms and diagnostic measurements." *Revels*, 874 F.3d at 662. The SSA published SSR 12-2 to provide "guidance on how we develop evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how we evaluate fibromyalgia in disability claims...." Pursuant to SSR 12-2p, once fibromyalgia is established as a medically determinable impairment, as the ALJ did here, "we then evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work."

Here, the ALJ's citation to normal examination findings suggests unfamiliarity with the diagnosis and treatment of fibromyalgia as a "disease [that] is diagnosed entirely on the basis of patients' reports of pain and other symptoms." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Id.* at 589 (9th Cir. 2004). As the Ninth Circuit has recognized, individuals with fibromyalgia typically demonstrate symptoms such as "chronic pain throughout the body" and "fatigue," but despite this, "a person with fibromyalgia may have muscle strength, sensory functions, and reflexes that are normal." *Id.* at 663 (citations and internal quotations omitted); *see also Satterwaite v. Astrue*, 781 F. Supp. 2d 898, 912 (D. Ariz. 2011) ("[F]ibromyalgia patients may 'present no objectively alarming signs' and may 'manifest normal muscle strength and neurological reactions and have a full range of motion.'") (internal citation omitted). Thus, here, the normal findings the ALJ identifies are not inconsistent with Dr. Park's opined limitations, nor with the chronic pain and chronic fatigue that she cited as contributing factors. *Smith v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00089-TUC-JAS

(EJM), 2021 WL 5605180, *10 (D. Ariz. Oct. 20, 2021) ("Normal findings on examination are not inconsistent with Plaintiff's fibromyalgia diagnosis and the associated limitations assessed by her treating physicians, especially given her consistent reports of pain and fatigue"). As such, the ALJ "erred by effectively requir[ing] objective evidence for a disease that eludes such measurement." *Benecke*, F. 3d at 594 (internal quotations and citation omitted); *see Elgrably v. Comm'r of Soc. Sec. Admin.*, No. CV-17-047600-PHX-JAT, 2018 WL 5264074, *7 (D. Ariz. Oct. 23, 2018) (finding that "the ALJ's determination that the opinions of [two treating physicians were] inconsistent with reports showing a normal gait and stance … with full motor strength in the bilateral extremities … [did] not constitute a specific and legitimate reason" to assign the opinions "little weight.") (internal citations and quotations omitted).

The third reason the ALJ provided for giving Dr. Park's opinion "no weight" was that "the physical limitations noted are inconsistent with the State consultant findings." (Doc. 9-2 at 27). In contrast to Dr. Park, the ALJ gave "great weight to the state consultants who opined the claimant could engage in less than light exertion work with no severe mental impairments." (Doc. 11 at 19; Doc. 9-2 at 25–26). The Court finds that this is not a "specific and legitimate reason supported by substantial evidence." *Ryan*, 528 F.3d at 1198. A non-examining physician's opinion "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of ... an examining physician.") *Lester*, 81 F.3d at 831. As such, in the absence of any other legitimate reason, the ALJ should have credited Dr. Park's opinion in formulating Plaintiff's RFC, rather than giving it "no weight." *See Johnson v. Comm'r of Soc. Sec. Admin.*, No. CV-18-00012-PHX-JJT, 2019 WL 1375688, *3 (D. Ariz. Mar. 27, 2019).

Furthermore, the Court finds that the ALJ erred by failing to evaluate the treating source's opinions according to the factors provided in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Because the ALJ chose not to give Dr. Park's opinion controlling weight, he was required to consider factors such as the nature, extent, and length of the physician-patient relationship, the frequency of evaluations, whether the physician's opinion is

supported by and consistent with the record, and the specialization of the physician. *Trevizo*, 871 F.3d at 676 (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). In general, "the longer a treating source has treated [a claimant] and the more times [a claimant has] been seen by a treating source, the more weight [the Commissioner] will give to the source's medical opinion." 20 C.F.R. § 404.1527(c)(2)(i). Dr. Park, having treated Plaintiff at least nine times over the period of a year, is certainly in a better position to evaluate Plaintiff's conditions and functional limitations than the State Agency consultant physicians, who never treated or examined Plaintiff. *See Smith*, 2021 WL 5605180, at *11 (concluding the same when an ALJ gave lower weight to two treating physicians than he did to state agency physicians); *see also Rose v. Berryhill*, 256 F. Supp. 3d 1079, 1089–90 (C.D. Cal. 2017) (finding error when an ALJ rejected the opinion of a treating physician who saw a claimant seven times in an eight-month period and instead fully credited the opinion of a physician who never examined the claimant, because the treating physician "in fact saw [the claimant] a number of times and long enough to have obtained a longitudinal picture of [her] impairment").

In sum, the Court finds that the ALJ erred by failing to provide specific and legitimate reasons supported by substantial evidence to assign "no weight" to Dr. Park's opinion. Further, the ALJ failed to address the factors outlined in 20 C.F.R. § 404.1527(c). Because Dr. Park's assessment included limitations that would preclude Plaintiff from maintaining employment, the Court cannot conclude that the ALJ's error was harmless. *See Marsh v. Colvin*, 792 F.3d 1170, 1172–74 (9th Cir. 2015) ("[A] reviewing court cannot consider an error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting [the opinion], could have reached a different disability determination."). Thus, remand for further administrative proceedings is required to reassess Dr. Park's opinion.

### B. Step Two Mental Impairments

Plaintiff also argues that the ALJ's committed materially harmful error by concluding at Step Two that Plaintiff's mental impairments were non-severe. (Doc. 11 at

20). Plaintiff bases this argument on another argument that the ALJ improperly rejected the opinions of LPC Charter. (*Id.*)

Prior to amendment in 2017, SSA regulations separated medical evidence into two categories: (1) "acceptable medical sources," including licensed physicians and licensed or certified psychologists; and (2) "other sources," including nurse practitioners, physician assistants, therapists, and counselors. 20 C.F.R. 416.913(a), (d) (amended March 27, 2017). For claims filed before March 27, 2017, as Plaintiff's was, the pre-amendment regulations apply. *See Leon v. Berryhill*, 2017 WL 7051119, at *3 (9th Cir. Nov. 7, 2017) (noting that prior to March 27, 2017, opinions of "other sources," such as counselors, were given less weight than physicians' opinions). As a licensed professional counselor, LPC Charter falls under 20 C.F.R. § 404.1513(d)'s definition of "other sources" of medical evidence. Under the SSA's pre-amendment regulations, ALJ may discount testimony from such "other sources" if the ALJ "gives reasons germane to each witness for doing so." *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

LPC Charter provided Plaintiff with individual counseling services roughly twice a month over a period of 10 years. (Doc. 9-2 at 52). LPC Charter provided four opinions regarding Plaintiff's mental health, in check-box form,[2] indicating that Plaintiff has mental impairments and various limitations that would preclude her from an eight-hour workday. (Exs. 12F; 24F; 33F; 60F). On each of the form opinions, LPC Charter marked, "yes" or "no" in response to questions and estimated the severity of Plaintiff's impairments and limitations on a five-point scale of "None" to "Severe," but she did not provide additional explanation of her findings, narrative or otherwise. (*Id.*)

The ALJ gave "no weight" to LPC Charter's opinion, stating the following:

> The undersigned give no weight to the opinion of Deana Charter, LPC, who noted the claimant with moderate to severe

---

[2] The check form opinions were dated October 2017, August 2018, September 2019, and December 2023 and were all entitled, "Medical Assessment of Claimant's Ability to Perform Work Related Activities (Mental)." (R. at 566–67, 701–02, 961–62, 1320–21).

>limitations (Exhibits 12F; 24F; 33F; 60F). She does not provide objective evidentiary support for her conclusory opinions in her opinion and although her treatment notes tend to note greater concerns with the claimant's sadness and anxiety, her treatment notes also are often clearly copied from prior examinations with her often noting the claimant as fearing losing her job, despite her not working for some time (Exhibits 22F). Her opinions also are inconsistent with treatment notes, including mental status examination reports and reported signs, all of which show mild and stable mental health issues on medications (Exhibits 30F/28, 23, 28, 33, 39, 44; 37F/37, 45; 55F/4, 11, 19, 28-29, 39, 45-46). The symptoms, signs, and findings from exams at Exhibits 30F, 47F and 55F undermine support for the conclusions at Exhibits 12F, 24F and 33F. The mental health providers at Exhibits 30F, 47F and 50F who treated and evaluated the claimant also have more relevant training and experience as medical professionals with LPC Charter not being considered an acceptable medical source[.]

(Doc. 9-2 at 27).

Plaintiff alleges that ALJ's rationale for rejecting LPC Charter's opinions is insufficient. (Doc. 11 at 20–25). Plaintiff acknowledges that because LPC Charter was not considered an "acceptable" medical source under the SSA's pre-amendment regulations, the ALJ was only required to provide "germane reasons" for discounting her opinion. (*Id.* at 21). However, Plaintiff contends the ALJ failed to meet this standard because (1) it is "error to discount check-box questionnaires" due to their check-box nature alone; (2) "LPC Charter's treatment notes provided support for the assessed limitations"; and (3) due to the waxing and waning nature of mental impairments, "LPC Charter's assessments were not inconsistent with" Plaintiff's "reports that her mental health symptoms were mild or stable at some visits with her medication management provider." (*Id.* at 20–25).

The Court disagrees with Plaintiff. With respect to LPC Charter's opinion, the ALJ noted that LPC Charter "does not provide objective evidentiary support for her conclusory opinions." (Doc. 9-2 at 26). While LPC Charter's opinions indicate the existence of mental impairments, she does not explain how those impairments result in the severity of the

limitations that she opined Plaintiff would have. (Exs. 12F; 24F; 33F; 60F). Accordingly, this was a germane reason for the ALJ to reject LPC Charter's opinion. *See Singh v. Comm'r of Soc. Sec. Admin.*, No. CV-19-02315-PHX-MTM, 2020 WL 5757620, *6 (D. Ariz. Sept. 28, 2020) ("[The 'other source's'] opinions note the existence of [the claimant's] mental impairments but [the 'other source'] fails to specify how those impairments result in the opined-to limitations. As such[,] this was a germane reason to afford lesser weight to her opinions.") (citing 20 C.F.R. § 404.1527(c)(3)) ("The better an explanation a source provides for a medical opinion, the more weight we will give that opinion."); *see also Molina*, 674 F.3d at 1111 ("[T]he ALJ may permissibly reject[ ] … check-off reports that [do] not contain any explanation of the bases of their conclusions.") (internal citations and quotations omitted).

Because the ALJ provided at least one germane reason to reject LPC Charter's opinion, the rejection was not improper; therefore, the Court need not address the ALJ's other reasons for rejection. *See Singh*, 2020 WL 5757620, at *6 (concluding the same when the ALJ provided one germane reason to reject an "other source's" opinion). The Plaintiff claims that the ALJ's conclusion that Plaintiff's mental impairments were non-severe was "founded on [his] improper rejection of the assessments from [LPC Charter] in the absence of germane reasons relevant to those opinions." (Doc. 11 at 20). However, the Court finds the ALJ's rejection of LPC Charter's opinions was proper. Accordingly, the Court also finds that the ALJ did not commit materially harmful error in concluding that Plaintiff's mental impairments were non-severe.

### C. Further Proceedings

Finally, Plaintiff requests remand for a calculation of benefits pursuant to the credit-as-true rule, or in the alternative, further administrative proceedings. (Doc. 11 at 25). The credit-as-true rule may apply when three conditions are satisfied:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose;

- 15 -

>   (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and
>   (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Behling v. Colvin*, 603 F. App'x 541, 543 (9th Cir. 2015). However, even if all three requirements are met, the Court has "flexibility in determining the appropriate remedy." *Brown-Hunter*, 806 F.3d at 495 (internal citation and quotation omitted). When the record in its entirety creates significant doubt as to whether the claimant is actually disabled as defined by the Social Security Act, the Court may remand for further proceedings on an open record. *Id.*

Here, the Court finds that remand for further administrative proceedings is appropriate. Regarding the second condition of the credit-as-true rule, the ALJ legally erred by failing to set forth legally sufficient reasons to reject Dr. Park's opinion, considering Plaintiff's fibromyalgia diagnosis. As to the third condition, the ALJ would be required to find the ALJ disabled if Dr. Park's opinion were credited as true.

However, the remaining condition of the credit-as-true rule only applies when the record is fully developed, with no conflicts. *Behling*, 603 F. App'x at 543. And as demonstrated by the foregoing, the record is not "free from conflicts, ambiguities, or gaps"; neither is Plaintiff's entitlement to benefits "clear under the applicable legal rules." *Triechler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d, 1090, 1103–04 (9th Cir. 2014); *see also Engquist v. Colvin*, No. CV-11-02455-PHX-GMS, *6 (D. Ariz. April 8, 2013) ([T]he existence of fibromyalgia and related ailments is not synonymous with a finding of disability … "[which] is a function of how much [the Claimant's] fibromyalgia affects her ability to work."). Rather, the Court concludes that there remains significant "doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Treichler*, 775 F.3d at 1108. Therefore, remand for further proceedings is appropriate "in an exercise of discretion." *Id.*; *see Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004))

(indicating that with rare exception, in a Court's reversal of an agency determination, the appropriate course is to remand to the agency for further investigation or explanation).

## IV. CONCLUSION

Given the foregoing, the Court finds that while the ALJ did not err in finding Plaintiff's mental impairments non-severe at Step Two of his analysis, he failed to provide legally sufficient reasons to reject treating physician Dr. Park's medical opinion, thus committing legal error. Further proceedings are warranted to reevaluate Dr. Park's opinion, incorporating any new findings into the RFC analysis as appropriate.

Accordingly,

**IT IS ORDERED** that the decision of the Commissioner is reversed and remanded for a new hearing and the issuance of a new decision.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.

Dated this 19th day of November, 2024.

James A. Teilborg
Senior United States District Judge